Good morning. Your Honor, may it please the Court, Christopher J. Stender on behalf of the petitioner, Balwinder Singh, and I would like to reserve two minutes of my time for rebuttal. Okay, keep your eye on the clock. This is an appeal of a decision from the Board of Immigration Appeals, finding that the petitioner, Balwinder Singh, provided material support to a terrorist organization. In order for the Court to properly conduct an analysis of this, two questions need to be answered. Whether the Khalistan Commando Force, the KCF, is a terrorist organization, and secondly, whether Balwinder Singh provided material support to the KCF. Do you challenge either of those findings? Yes. We challenge both, Your Honor. First of all, and I think much, very importantly, the KCF is not a designated terrorist organization. The immigration judge, in his decision, of which there were two, there's an original decision, a remand by the Board, and then a further – a second decision by the immigration judge and a second decision by the Board of Immigration Appeals. He mistakenly cites to the fact that the KCF is a Tier 1 or perhaps a Tier 2 organization, that it was either published under Section 219 of the Immigration Act or that it was published under the Federal Register as a Tier 2 terrorist organization. Now, at the administrative hearing, what challenge was made to that finding? Apparently none, Your Honor. That's a problem for you, isn't it? Perhaps so, but I think, interestingly, the way around that is the Board of Immigration Appeals correctly tries to identify the KCF as a Tier 3 organization. But in order to do so, there has to be an analysis conducted by the factfinder. The factfinder is the immigration judge, not the Board of Immigration Appeals. They cannot engage in factfinding in the first instance. In the Kahn case, the immigration judge conducts an analysis there, finding that a different terrorist organization was, in fact, a Tier 3 organization. And he justifies his decision by making specific findings of fact and reviews the evidence in the country reports and says, therefore, I find this to be a Tier 3 organization. The Board of Immigration Appeals realizes the mistake that the immigration judge has made in citing to the wrong sections of law makes its own factfinding and calls the KCF a Tier 3 organization. Now, when I came in here this morning, I thought this case involved the argument as to whether or not there was an exception to the terrorist bar, not a challenge to the determination of whether or not assistance had been given to a terrorist organization. So we did raise that in our brief. I believe it's our first argument that we argued that there was incorrect factfinding in the first instance by the Board of Immigration Appeals. This, in and of itself, warrants a remand back to the immigration judge for factfinding on this issue. The immigration judge, when he makes his decision, cites to the Chima case, but this is unavailing. The KCF has never been designated under Section 219 in the Federal Register. It's spoken about in case law. But even if this is true, the immigration judge has to make a finding. He must make a ruling, and he never does because he's in the wrong section of law. Breyer.  It's a lengthy brief, so if I could, on page 19 and 20. Statement of issues? Is that the statement of issues? It's under our first argument, Your Honors. It's the last paragraph on 19. It starts off, The Board may have been aware of the fundamental problem but did not want to acknowledge it or distance itself too far from the IJA's decision. The Board actually cites to the proper section which defines terrorist, and it goes on. But where did you put that? Did you flag it as one of your issues? It's in the first argument, whether or not he could have properly been found to be ineligible for asylum withholding because it was a finding that the KCF is a terrorist organization. And I think it is fully pointed out. Okay. We'll decide that. Why don't you move on to the materiality issue then? The second important issue is whether there was, quote, material support provided by the Petitioner to the KCF. Congress did not intend material support to embrace acts that are not of importance or relevance to terrorism. To hold otherwise reads the material portion out of material support. The material, the word material qualifies the word support. Webster's definition of material is being of real importance or of great consequence. Well, there are two. What are the, what did the Board rely on here? They went to food and the fact that there was a gun hidden on his property? The Board looks at On his property that he was managing? The Board looks at three things and argued in Respondent's Brief. There's meals provided to friends who supposedly are terrorist members. Okay. There's lodging supposedly. And supposedly the employee of the Petitioner had a weapon. Okay. That sounds fairly material on its face, doesn't it? Well, but it's not for the following reasons. What is, really what we have is a very, very poor factual record. The two individuals that the Petitioner provides meals to are childhood friends of the Petitioner. How often he provided meals, what type of meals, how many people ate the meals is never discussed. Was it established whether or not they were members of KCF? The support for that position is the Petitioner's own testimony, where he identifies that his childhood friends left his village and joined, and he says the KCF. They may have been childhood friends, but that doesn't mean they can't be terrorists. And if they're terrorists, friendship or not, he gave them food. It may have been for an altruistic purpose, but he did it. It doesn't matter, though, because it has to be material support. Okay. Well, food is one of the basic needs of human existence. Right. But mere support is not material support. Okay. Well, but didn't Singh testify himself that he had the authority to order the employee to return the gun? No. That's mistaken in the record. If you look at what the record says, Bahadur is the employee of his great-uncle, and the Petitioner on occasion would watch over the great-uncle's house. When the great-uncle was in Canada for six months, he would come back for six months. So he's in temporary control. It's never agreed to. He testifies basically that he has influence over the individual, but not authority. If you look at his testimony, he says he could have tried to persuade him to give up the weapon. Did he? He said yes. He did try to give him. He did try to persuade him. Yes. He does try to exercise his influence, but it's never established that he had authority. And if there is authority, what type of authority is it? Is it an employer-employee type of authority? That's never established in the record. The board and the immigration judge make that presumption from that record, but it's very poorly developed. So, again, the frequency of the meals, the quantity of the meals, none of this is discussed. And how those meals were important or relevant to terrorism, how those meals furthered some sort of terrorist act is never discussed. Regarding the lodging, by definition, safe houses aid and abet terrorism, there's never been a determination that lodging in and of itself would support terrorism. And there's no evidence that Balwinder could have prevented the occasional use of his great uncle's house by these, quote, terrorists, even assuming they were terrorists. As we've already brought out in the argument, Bahadur was not an employee of the petitioner, Balwinder. He worked for his great uncle. So he admits that he has influence over Bahadur, but it's not clear what kind of authority that he exercised over Bahadur. You have a very poor factual record here. The immigration judge, the Board of Immigration Appeals, the Respondent's brief seizes upon the ---- Kennedy, what's our standard of review, then? You say we have a poor factual record. Are you saying there's not substantial evidence? There is not substantial evidence. This case is almost on all fours with the Singh car case out of the Third Circuit. What is extremely persuasive is Judge Fisher's dissent out of the Third Circuit, where he takes apart the arguments, just like here, where the immigration judge, the board, sees upon some testimony that's poorly developed and say, well, clearly, there was support provided, there were meals provided, so that's material support, and therefore, he's barred. It's a rush to judgment what happened in this case. There's no Ninth Circuit authority along the lines of the Third Circuit. Is that correct? The Kahn case deals with the provision of funds to a ---- to an organization that had two different wings, a violent terrorist wing and a nonviolent. And in Kahn, they say, well, it doesn't matter if you tried to earmark that money to the nonviolent. Money goes to the organization and it helps it, and therefore, it's material support. That's not what we have here. Again, as we pointed out, there is some provision of meals, but it's never discussed in any detail. The lodging also ---- Breyer, we don't need the menu, do we? Well, I think you need some sort of finding of fact, and you need to say the meals were provided on this many occasions and this quantity to this many people. He just says occasionally they would come by and he would provide meals. Is that once? Is that twice? And if so, how does that further the terrorist activity? Okay. I think we have that point. Is there something else you want to add, or do you want to save your time for? I had ---- I've kind of gone over certain of my points a little bit farther, but I'll rest right now and reserve the other two minutes I have. Thank you. You actually have four and a half minutes, so. Thank you. May it please the Court, Ethan Cantor on behalf of the U.S. Attorney General. Your Honors, to the extent that this petition requested a remand, which is one of the issues designated in the Petitioner's Open and Brief, for the purpose of having the Board implement in some way the terrorist exemption under Section 1182d3bi, that issue is moot in light of the information that was put before the Court in connection with the waiver issue. The waiver issue is now moot because the agency considered Mr. Singh for the waiver and denied it. In addition, the Convention Against ---- Who reviewed it? Excuse me? Who considered the waiver? This is one that allows either the Secretary of DHS or the Secretary of State to recommend. Right. The Secretary of Homeland Security implemented the waiver by delegation to the Citizenship and Immigration Services. That's the Chair Talk memo? Exactly. And that waiver decision is by statute unreviewable. Okay. And so tell us then what happened. If we're going to hold this moot, could you be a little more specific as to what happened? In other words, the Chair Talk memo came down. It delegated to what is it? CIS. CIS. And CIS actually took up and implemented that and looked at Mr. Singh's circumstance. Exactly. And sent a notice to the Petitioner, which he attached to one of his motions before the Court, referring the case for an interview. He was interviewed and considered for a waiver, and then a decision was issued, July 1, 2009, which also made its way to this Court in connection with briefing on the stay. That's what I thought, so I just wondered. Okay. I'm sure we were talking about the same thing. In addition, I would point out before getting to the sole issue remaining before the Court that the Convention Against Torture issue is also moot in light of the Petitioner's voluntary action in requesting this Court to lift the stay to acquiesce in his removal. The Convention Against Torture provision is one of limited relief protection against removal, and he's been removed, so the case as it stands now cannot concern the issue of being protected from removal. So that issue is moot as well. The sole issue is the question, did he render material support? He did not raise, the Court is correct, he did not raise the issue of whether or not the KCF is a terrorist organization to the board, and that failure deprives the court of jurisdiction to address it here. Nonetheless, it's quite clear. Kennedy, let's jump to that material support. Has this Court ever held that the provision of food to terrorist organizations constituted material support? What this Court has held in the decisions of humanitarian law project cited in the government's brief and the Kahn decision is affirming the congressional finding underlying the statute that any contribution to a terrorist organization, because that organization is so tainted by the nature of that organization, any contribution to it facilitates that criminal or terrorist conduct. So that would include food. Kennedy, your argument would be that if all we had in this case is his friends drove by for one meal, and they were later, and it was established, A, that they were in fact terrorists, and, B, that he knew it, that that would be enough? That is correct. My opposing counsel did question whether there was evidence to show that the food or the meal somehow furthered the terrorist activity. And that's not a requirement of the statute. Indeed, the material support provision had, in relation to the undesignated so-called tier 3 organizations, the ability to show, to exempt you from the status that there was evidence that you either did not know or should not reasonably have known that, and the way the statute was previously written was that the contribution or support would further the terrorist activity. That was amended by Congress. And now the knowledge exception, only relevant with respect to knowing it was a terrorist organization. So that argument is just not relevant as a matter of law. I think Your Honor is correct. If it only related to food, he rendered material support here. We have the Singh decision, humanitarian law project, and the Kahn decision, I think, which underscores that. However, in this case, and I think it's worth pointing out, that both the immigration judge at pages 47, 55, and 56 of the administrative record, and the board at page 102 of the administrative record expressly found that he had provided shelter as well as food. However, the Petitioner did not raise that issue before this Court. He waived that issue, which is a dispositive issue. And on that ground alone, the Court should dismiss the petition for review or deny the petition for review. Kennedy, what about the gun issue? You haven't cited that. The gun issue, excuse me? He's arguing that in the Right. He did challenge the gun issue. And the notion that, you know, sort of poor record, I disagree with that. I think the record is quite clear. It does, in applying the statute, it doesn't require explicit, you know, agency principle law that he had total control of this employee. Yes. Kennedy, I'm just trying to understand. You can go. I'm going to ask you to elaborate on that. But you seem to be suggesting that the food is enough, one meal enough, as long as you know it's a terrorist organization that they belong to. But then you said also there's shelter. And then you seem to put there, so I'm just wondering. I believe Your Honor was asking me a hypothetical. If there were only – Well, yes, I was. And I was answering the hypothetical. Okay. However, this record shows multiple meals and provision of material support, including shelter, and allowing, to use the Board's word, allowing his employee to store this weapon. And my co-counsel is arguing that there must be a showing that he had total control over this employee. The law does not require that. Material support can be material in terms of the Petitioner's relationship to the property. But wait a minute. If he didn't have the ability to control this employee, what was he supposed to do? Abandon his presence on the property, or what are you suggesting he could have done? Well, by his own words, he said, as a result of certain factors, I did not intervene. In other words, he acknowledged that he could have intervened in some way. And how, the record does not show. However, there are many ways to intervene, which is to involve law enforcement, to fire the employee, to ban the employee from the property. This was his family's property. His uncle, the owner, was overseas, yet he referred to it as our property. He referred to Bajador, the employee, as our employee. And he, by his own words, noted that he could have intervened in some way. And that is enough to constitute material support. All right. If regarding the before I rest, let's look at my note. Regarding the Don't lose points by closing the book. I don't want to lose those points. And you won't waive anything. He noted on the substation. Don't argue yourself out of a, you know, into a problem. Go ahead. I will take the Court's advice. No, no. I just want to make sure you understand and all counsel understand, we do not hang on every word such that if you don't use your full time, we'll feel offended. I understand. I understand. Even as eloquent as you all are. I wanted to respond to my opposing counsel's argument. Sure. And if you have something you want to say. One additional point. Been there, done it. He noted issues regarding the quality of the evidence and whether there was a poor record and that there was not substantial evidence. The controlling standard is, with regard to his petition, that the record compels a conclusion opposite to that reached by the board. And the record does not meet that standard. And for that reason, on the sole issue remaining before the Court, the Court should deny the petition. Thank you. Thank you. Thank you. Briefly regarding my co-counsel's argument that we in some way waived the argument regarding the shelter, that is not true. It's clearly implicit in our argument. And if you look at the quote in the Respondent's brief from our brief, we said the petitioner allegedly provided meals and nothing else. And nothing else would include shelter or the employer, the gun being held by Bajador. So clearly it's implicit in our argument. We've always argued that at most he provided food or meals. And there's no waiver of that argument. The Respondent's argument fails in regard to the employee because it presupposes a duty to act, that Ballwinder had a duty to act on Bajador's behalf, that he was the employer. Oh, no, wait a minute. If he knows that the gun is being held on behalf of a terrorist organization, then he is acquiescing in it. Now, if you say, if you were to say he had no authority, he couldn't do anything, he couldn't report him to the police, he couldn't seek anything, could take no affirmative action, I don't think it's hard to see that Congress is saying this is going to turn on authority, you know, principles of agency, as was argued, suggested you might be trying to say. That's a little hard to take. Well, I think you'd make perfect sense because material support doesn't presuppose a duty to act, to apprehend other people, to report them to the police. Well, that's not what he's – he's allowing him to hide a weapon on his property, hide from the – presumably from the authorities. That's called aiding and abetting in some or accessory after the fact. I mean, there are – you know, I'm having a little trouble with the concept that a by acquiescing in it, you aren't providing support. Well – Guns are pretty material. Well, I agree. And therefore, the facts are so important, so relevant here. It is a poor record. And what has not been proven that, again, that Bajador was an employee on his property or property that he had control over. When the Petitioner talks about he was an employee of our family, if he says it that way in the context of he's employed – again, in the cultural norm of India, there's extended families. So when he said he's our employee, it doesn't mean he's my employee. He's an employee of our family. It's a different context. And that's never brought out in the record. Okay. I think we have that. We can look at the record. I just want to make sure counsel for the government has argued that the discretionary waiver by the Secretary that's been delegated is actually moot. Do you agree with that? I don't, Your Honor. It, unfortunately, is not in this record directly. It was done on June 1, 2009. I sat with the Petitioner during both of those interviews. He was re-interviewed on the entire merits of his asylum application. And while this Court doesn't have authority over the discretionary decision, this Court would have authority over whether that review was done correctly. Has that been put before us? No, it's not been. But that question was addressed by Respondent. So I wanted to address it also. I know, but we don't have any basis for it. Well, it was brought up. I just didn't want to leave it there. We'll chalk that up to a nice try. Now, how about on Kat? I understand, is it true that Mr. Singh has been already removed? Yes. He isn't in here as we speak. And through the family, I've confirmed that. Okay. Would it moot that? Well, yes, but just as a footnote, or perhaps as a counter to that, what it doesn't moot is the fact that the Respondent wanted to adjust his status based on an approved visa petition, but for the terrorist bar, he could have adjusted his status. And it's not moot because he still can come back under immigrant visa processing through the consulate. Adjustment of status issue. Right. It's not moot, but then. Right. Okay. So the petition is now mooted out in its entirety. And it's very important whether or not this Court would uphold the finding that he has a terrorist bar. Yeah. I didn't understand counsel to say because he's removed, he mooted the whole case. I don't think he did, but I just wanted to just highlight that. Thank you very much. Thank you both. And thank you, counsel, for your most civil argument. It's a pleasure to have counsel who respect each other and argue accordingly. So thank you. Case argued as submitted.
judges: Mills, Fisher, Rawlinson